JORDAN, Circuit Judge
Dissenting.
The majority concludes that the District Court was within the proper bounds of *911 discretion in denying EMI’s motion for relief under Rule 60(b)(6). On this record, I disagree with that conclusion and thus respectfully dissent.
Rule 60(b)(6) of the Federal Rules of Civil Procedure is a catch-all provision that allows a district court to reopen a final judgment or order for “any ... reason [other than those enumerated in Rules 60(b)(l)-(5) ] that justifies relief.” The rule provides a form of “extraordinary relief’ because, if granted, a Rule 60(b) motion has the effect of reinstating a claim that has reached a final disposition. Del. Valley Citizens’ Council for Clean Air v. Pennsylvania, 755 F.2d 38, 45 (3d Cir.1985). A movant seeking relief must show both that the movant is “faultless in the delay,”[1] Pioneer Inv. Servs. Co. v. Brunswick Assocs., Ltd. P’ship, 507 U.S. 380, 393, 113 S.Ct. 1489, 123 L.Ed.2d 74 (1993), and that “exceptional circumstances” warrant reopening its case, Del. Valley Citizens’ Council, 755 F.2d at 45. We review grants or denials under Rule 60(b)(6) for abuse of discretion. Budget Blinds, Inc. v. White, 536 F.3d 244, 251 (3d Cir.2008).
We have previously held that attorney neglect may constitute an extraordinary circumstance supporting relief under Rule 60(b)(6). For example, in Carter v. Albert Einstein Medical Center, 804 F.2d 805 (3d Cir.1986), the plaintiffs attorney failed to respond to the defendant’s interrogatories, and, after the court ordered her to respond and she again failed to do so, the court dismissed the plaintiffs case as a discovery sanction. Id. at 806. The attorney, however, had told the client that she had complied with the court order. Id. The client did not learn of the dismissal until four months later, when he independently checked the docket for his case. Id. He then discharged his attorney and filed a pro se motion under Rule 60(b), arguing that his attorney’s mismanagement warranted reopening the case. Id. The district court denied the motion, and we reversed, holding that the denial constituted an abuse of discretion. Id. at 807. We concluded that the client “should not shoulder the burden of [his attorney’s] incompetence alone” because he was not responsible for the attorney’s negligence, had no reason to know of the misconduct, and acted reasonably after discovering it.[2] Id. at 808.
Similarly, in Boughner v. Secretary of Health, Education, and Welfare, 572 F.2d 976 (3d Cir.1978), the defendant filed a motion for summary judgment, to which the plaintiffs attorney filed no response. *912 Id. at 977. The district court granted the motion as unopposed, and the plaintiff later moved to reopen under Rule 60(b)(6). Id. The plaintiff explained that his counsel failed to oppose the motion because the attorney was running for election as a local judge and spent most of his time campaigning. Id. The attorney had neglected to oppose dispositive motions in a total of fifty-two cases, though he never informed the plaintiff or any other clients that he was no longer handling their claims. Id. We concluded that, because the client was blameless for the attorney’s misconduct, the attorney’s abandonment of his client constituted sufficiently extraordinary circumstances to warrant relief under Rule 60(b)(6). Id. at 978-79.
In my view, EMI occupies a position similar to the plaintiffs in Carter and Boughner. LaVergne promptly obtained local counsel and filed the complaint after EMI retained him. On September 2, 2008, the defendants filed a Rule 12(b)(6) motion. The District Court referred the case to a magistrate judge for the purpose of holding a settlement conference, which occurred on September 11, 2008. Following that conference, LaVergne informed EMI that defendants had not made a settlement offer, and around the same time he assured EMI that he was preparing an opposition to the motion to dismiss. He never actually filed the opposition, and the Court' thus dismissed the complaint on October 8, 2008. Yet, when EMI’s general counsel spoke with LaVergne in mid-October, LaVergne responded “that [EMI] would be receiving [the] Opposition Brief shortly,” giving EMI the impression he would also file it with the Court. (App. at 120.) EMI waited until mid-November 2008, when it still had not received the brief. It was then that EMI discovered for the first time that the Court had dismissed the complaint.
EMI’s general counsel immediately contacted LaVergne, who stated that the dismissal was a “procedural error” and that he was working with the magistrate judge and the magistrate judge’s law clerk to resolve it. A month later, in December 2008, LaVergne completed the brief and sent a copy of it to EMI, causing EMI to believe that LaVergne had resolved the problem. EMI did not discover LaV-ergne’s deception until early 2009, when EMI’s general counsel again checked the docket and realized that the case remained closed. EMI immediately attempted to contact LaVergne, but his telephone number had been disconnected. The company then moved with reasonable dispatch to retain new counsel and file the present Rule 60(b) motion.
.Based on these facts, I cannot agree that EMI shares responsibility for dismissal of its case.[3] LaVergne initially repre *913 sented EMI in what appears to be an appropriate manner, by filing a complaint, retaining local counsel, and participating in the settlement conference, all of which would reasonably lead EMI to believe that he would continue to handle the litigation appropriately. EMI periodically communicated with LaVergne about the status of the case, and LaVergne informed EMI that the case was proceeding as expected, that he was preparing an opposition brief, and that the dismissal was a procedural error that he was working to remedy. In fact, LaVergne went so far as to write an opposition brief and forward a copy to EMI to maintain the illusion that the case was progressing on the merits. EMI had no reason to disbelieve LaVergne until January 2009, when it discovered that, despite LaVergne’s representations, the Court had not rescinded the dismissal. When EMI became award of LaVergne’s misconduct, it promptly began efforts to obtain replacement counsel.
Defendants argue EMI could have learned of LaVergne’s nonfeasance and misfeasance sooner had it contacted the clerk’s office or spoken to the court directly, and the Majority apparently agrees that “reasonable minds could differ” about EMI’s ability to discover LaVergne’s errors. (Maj. Op. at 910.) However, I believe that LaVergne’s misconduct was beyond what EMI should have been expected to perceive and that attorney abandonment such as EMI suffered here should not result in the loss of the opportunity to have a case heard on the merits. A client is entitled to rely on the representations of its attorney, particularly when the client has no reason to suspect the attorney of untruthfulness. See Pa. Rules of Prof’l Conduct 8.4(c) (prohibiting attorneys from “engaging] in conduct involving dishonest, fraud, deceit, or misrepresentation”). EMI had no reason to doubt LaVergne’s truthfulness in this case. While it may not be common for a procedural error to result in the dismissal of a case, it is not unheard of. Faced with an apparently unwarranted dismissal, a litigant — either personally or through counsel — would naturally want to contact the court to resolve the perceived error, and LaVergne’s assertion to EMI that he was doing just that should not have caused EMI to question his handling of the case. Nor does the timing of events indicate that EMI allowed the case to languish for any extended period which would give rise to an inference that it shared in its counsel’s neglect to prosecute its claims.
I would therefore conclude that what appears to be LaVergne’s egregious misconduct, and his alone, qualifies as an extraordinary circumstance warranting relief under Rule 60(b)(6). Accordingly, I would reverse the District Court’s denial of the motion.

. I do not take the word “faultless” here to mean "pure as the driven snow.” A complete stranger to a dispute can claim to be without any responsibility for what goes on in the handling of the dispute, but parties to the dispute will virtually always be affecting the actions of one another and so will have some causal impact on events. The question is whether the degree of impact warrants attributing “fault” and so denying relief. Thus, two of our sister courts of appeals have said that the Rule focuses not on whether a party waited to seek relief but on whether the party should properly shoulder blame for that delay. See Blanchard v. Cortes-Molina, 453 F.3d 40, 44 (1st Cir.2006) ("If a party is partly to blame, Rule 60(b)(6) relief is not available to that party____” (internal quotation omitted)); Jackson v. Wash. Monthly Co., 569 F.2d 119 (D.C.Cir.1977) ("[A]n attorney’s deception of a blameless client would survive as a basis for relief under Rule 60(b)(6).”).

. We also stated that, while a client injured by his attorney’s incompetence may be able to file a legal malpractice action or a disciplinary complaint, those remedies are not alone sufficient to rectify the damage to the client, because the attorney may lack adequate funds to cover a judgment and because malpractice proceedings are likely to consume a lengthy amount of time, preventing the client from obtaining timely recompense for the attorney’s mismanagement. Carter, 804 F.2d at 808.

. The Majority suggests that EMI has "acknowledge[d] that it had ‘some’ control over the delay” between October 2008, when the District Court dismissed its claims, and April 2009, when it moved to reinstate the suit, (Maj. Op. at 910 n. 5 (quoting Appellant's Op. Br. at 28)), and that EMI is therefore not “faultless in the delay,” Pioneer Inv. Servs., 507 U.S. at 393, 113 S.Ct. 1489. However, I do not read EMI’s brief as making such a concession. To the contrary, EMI asserts that, each time it investigated the status of its case, "Lavergne ’assuaged’ [its] concerns by Lying to his client,” (Appellant's Op. Br. at 27), and that it was "effectively hoodwinked" by LaVergne’s representations, (id. at 28). The language from EMI’s brief that the Majority construes as a concession is, in my view, merely an alternative argument that, "even if there was some control on the part of [EMI], this does not automatically warrant” a finding that there was no excusable neglect for purposes of Rule 60(b)(1). (Id.) I do not believe that making an alternative argument in this fashion amounts to a concession that EMI contributed to the delay, and, for the reasons described above, I also do not believe that the record supports such a conclusion. *913 To the extent that the Majority faults my reliance on Carter and Boughner because those cases predate Pioneer, that objection is irrelevant because EMI was effectively faultless here. Moreover, I fail to see significance in the Majority’s attempt to distinguish Carter as a discovery sanctions case and Boughner for failure to describe the length of the delay at issue. Both Carter and Boughner remain binding precedent with regard to the type of conduct by counsel that warrants relief under Rule 60(b)(6).